Our first case for today will be Motel6operating L P versus HI Hotel at all, number 16-1989. Good morning, your honors. Good morning. I'm Jeffrey Harriman, the law firm of Ward, Greenberg, Howard & Levy. I am here on behalf of the appellants, who for simplicity in the briefing we've referred to collectively as Motel6, and I'd like to continue that expediency today. I guess you won't be needing rebuttal time. No, your honor, I won't. The main issue presented by this appeal is, as you know, what is a counterfeit mark for purposes of traveling damages under the Lanham Act? There is a circuit split on this issue, albeit a lopsided one. The cause of this split is a disagreement on whether it is correct to focus strictly on the genesis of a market issue, as was done by the Sixth Circuit in U.S. structures, or to concentrate more on the authenticity of the connection between a trademark and the goods or services it's associated with, as did the Fifth, Seventh, and Ninth Circuits, as well as many district courts that we've tried to detail for you. If we agree with you, is there any limit? I mean, is everything then counterfeit? No, your honor. You still have the second piece of the definition of counterfeit, which is identical or substantially similar. You need to have a very close, if not an exact, replica of a mark to qualify for the counterfeit traveling. Otherwise, it's trademark infringement. Well, I had a similar concern to Judge Sirica. I mean, it seems that your definition is very broad. It could sweep in counterfeit indeed, but copies, reproductions, color limitation, anything really. Well, your honor, if it's an exact replica or a nearly exact replica, the Congress has decided to punish that more severely than the example I would use to say the Panasonic example, where you've got a trademark that isn't identical, isn't really substantially identical. If you're looking at it carefully, you can see that the Panasonic is spelled different than Panasonic. However, that's still punishable as an infringement because either for purposes of palming off or dilution, you're trying to deceive a consumer of the connection between the good and the company. And that's what counterfeit protection, the traveling, is designed to remedy. We're looking at the consumer. Are we likely to confuse a consumer? Are we likely to make them believe that a good or service that is attached to this counterfeit, this spurious mark, are the goods they're expecting to buy or not? Well, I mean, I guess the concern is we look to the statute first. The statute really, I mean, I'm sure you agree that it just says counterfeit dealing with travel damages, right? We're loathe to sweep everything else in it to come up with your travel damages. So that's why we're trying to figure out why. Maybe this deals with the definition of counterfeit. You gave us some pretty good ones, I thought, from Black's Law Dictionary and all. You know, things that are erroneous, origin, fake. I mean, these marks weren't fake, were they? They were the original. They're just being used beyond the time that they're licensed for, right? They are the marks that were received from the hands of Motel 6. That is correct, Your Honor. But I think if you look at the definition of counterfeit, which is in Section 1127 of Title 15, you have sort of a two-part inquiry. You have whether a mark is spurious, i.e. suggesting a false origin, and is identical or very close to that registered mark. So you've got a piece focused on the literal incarnation. Is it very close or exactly a copy of the registered mark? And then you have this question of origin. But it is the original, though, isn't it? It's authentic and it's not fake. It may be used without authorization, but isn't it really the same? Well, I think the question, that answer to that question, Your Honor, is what tripped up the Sixth Circuit and why we suggest that this Court not follow that lead. If we're speaking in terms of the literal incarnation, the icon that was on my Starbucks cup this morning, whether that is an authentic or false or spurious mark is a matter of where it came from. Did it fall off the back of a truck? Was it copied? Was it received from the hands of Starbucks? If it was a real Starbucks cup, but some guy around the corner puts non-Starbucks coffee in it, it's not a spurious mark. They're lying about the coffee that's in the cup, right? Well, Your Honor, I would respectfully disagree that it is a spurious mark at that point because unlike most physical incarnation we talk about counterfeit, the purses on the streets in Manhattan or some person printing bogus dollar bills in their basement, the value of those objects is in their physicality. The bag, the dollars. In the case of a trademark, it's the associative property that that mark has to the goods or services it's depicting. All right, so does that mean that if the folks in this case or any other case, they get their franchise pulled on July 1, that means that if the Motel 6 signage is still up on July 2, that's a counterfeit sign? I think that would depend on the language of the relevant authorization, in this case the franchise agreement. The franchise agreement says if you don't pay your royalties, if you don't pay your monthly royalties, we may cancel immediately your right to operate a Motel 6. So on July 2, my hypothetical, it's not a Motel 6 anymore, right? That's right. So then does that mean that's a counterfeit sign? Yes, Your Honor. That mark becomes spurious. You don't even have a date? They don't get 24 hours to take the sign down? You know, I think on a fact-by-fact basis, the question of the amount of time they have in prior notice they have to take down their signage is an issue. And that's the exceptional circumstances, right? So that's a case-by-case, a factional inquiry, right? Right. And shouldn't we distinguish in this case between the two groups? Because H-1 had a right to use this Motel 6 mark at some point in time, correct? Yes, Your Honor. And then it lost that right. Yes, Your Honor. And 1450 Hospitality never had a right to use it. Yes, Your Honor. So isn't it possible that the district court, in the exercise of her discretion, she could say, well, you know, I think there are exceptional circumstances for H-1 because at some point in time they had a right to use it, and then they lost it. But as for 1450, there's no excuse there, and that was counterfeit ab initio. Well, I think that comparison draws the importance of that associative property and what we're really trying to defend here in trademark law. But as a matter of the definition of counterfeit, both are the same. It's a question of whether there was authority to use that mark. I guess what I'm asking is, does it have to be a bright-line rule, or is there some room here for the exercise of judgment, i.e. discretion, in the district courts? I think even if we accept your broad proposition that the majority of circuits are generally correct, that in the service area you can't have counterfeit because the value of that Motel 6 mark or any other mark is that it brings with it a certain business reputation for a certain level of quality. And if you're no longer associated with that, then you're lying about the service being provided. That's the policy behind it, right? Yes, Your Honor. So do we have to adopt some bright-line rule that says you're going to win every one of these cases, or does the district court have some room to exercise judgment based on the facts of each case? No, Your Honor. I wouldn't argue that there's a bright-line rule in that sense. We have to decide what the statute means. But to your point, there is that ability to find or not find an exceptional nature of an infringement. There's also a question of damages. What damage does a party suffer from one day's overuse of a particular trademark? That's something that's in the purview of the district court.  The travel damages are mandatory? Yes, Your Honor, but if we have a one-day holdover, the traveling of damages is going to be obviously less than if you have a six-month holdover. But the exceptional nature of the infringement in this case isn't necessarily going to be the case in the next situation, in which case the district judge would have some discretion to decide whether this is appropriate. But for this case, when we have a clear finding that there was willful and deliberate infringement of a trademark, we really are needing only to focus on the definition. Is there any, you know, following up on Judge Hardiman's question, is there any reason to distinguish between goods and services here? That is, it seems to me these franchising situations are maybe a special breed of case here. And, you know, what is so obvious with goods is maybe not quite so obvious with services, for reasons we've been discussing. Or does the rule have to apply to both equally? Your Honor, I would submit that the rule is generally applicable for both goods and services to franchise relationships, to distributor relationships. When it comes down to it, trademark law applies across the spectrum in these different areas. It's a question of the maintenance and protection of a trademark and what connection it has to goods or services. And goods and services are used all throughout the Lanham Act. So whether we're talking in this case about a holdover franchisee or a distributor who maybe stamps Westinghouse breakers like in the Ninth Circuit or in Spiker, the GE products in the boxes, the considerations are the same. What does the consumer think he or she is buying when they see an identical or substantially similar mark on a box or on a coffee cup? Why is it so important that you have, you're going to have a likelihood of confusion under either section here, under infringement or counterfeit. Why is it so important that these be in the counterfeit area rather than in the infringement area? Well, Your Honor, I think Congress has taken a very hard line in focusing on trademark counterfeiting, certainly since the Lanham Act was passed, but then in trebling the damages in 1985 as part of that amendment under the Counterfeiting Act. Well, I remember those original cases dealing with goods and selling items on the street and so forth, and it obviously made a lot of sense there. Certainly, but what I think the Congress and certainly the courts interpreting the Lanham Act have done is look at the issue of counterfeiting as a special species. When we're talking about trademark infringement in general, there's always the question of can we really contemplate the full scope of damages a trademark holder suffers when someone misuses a trademark or attempts to trade on that mark. When we're talking about an identical or substantially identical mark, we're talking about situations where there's little to no chance that a consumer could detect the falsity, whereas in the case of the Panasonic example that I gave you, a diligent consumer could detect that falsity. So Congress has made the decision to punish that more severely, that situation, than the run of the mill. But how could a consumer be deceived here when the H1 folks, when they lost the franchise, they started representing this as a travel in, they changed the name once they lost their Motel 6 franchise, didn't they? Well, the Motel 6 signage was still present, I believe, both in the rooms and in some exterior signs. But to the extent that in this particular case there might have been some confusion or some mixing of trademarks, the fact remains that there was continued use of that mark that there was no longer authority to use in order to sell services, and in fact, deficient services, which is why they lost the franchise in the first place. There's the harm to Motel 6. But even if we agree with you, shouldn't we remand the case? Because isn't it possible that the trial judge in exercising her discretion could say, you know, the H1 folks, they lost the franchise, they quickly said we're no longer a Motel 6, we're a travel in. They left out the signage, I understand that, the Motel 6 signage. But I think a reasonable consumer that would see the travel in sign all of a sudden or the red roof in sign, both of which they used, right? Yes. The reasonable consumer concludes, oh, something happened with Motel 6 and now they're switching, right? That's kind of obvious to the reasonable consumer. So couldn't the district court find that that operator is not liable automatically for counterfeit and the trouble damages, et cetera, but perhaps the 1450 operator that, as I understand it, resurrected exclusively the Motel 6, which again would tell the reasonable consumer, oh, this is a Motel 6 again, right? So couldn't we have divergent results for the two different groups of defendants? I don't think so, Your Honor, simply because all parties, say, for one defendant who we've excluded from this appeal in our definitions, were found liable for trademark infringement. So at that point, you've got the infringement finding by the jury. The question is whether there should be a travel in because of the type of mock that was used, the nature of the mock. That gets back to what I was asking before. You're asking us, I'm afraid, to go too far. You're asking for this automatic rule that when there's trademark infringement, it follows necessarily that there's counterfeiting, and I'm not sure I agree with that because of the exceptional circumstances exception. Doesn't that exceptional circumstances exception give the trial judge the power, indeed the duty, to evaluate the facts and circumstances of each case to decide, well, you know what, this is kind of a close one. I'm not going to say this is a counterfeit, even though there was trademark infringement. I think, Your Honor, what I'm not arguing for is a bright line rule generally. I think de facto in this case there would be a bright line rule because I see my time has expired. Thank you, Your Honor. There would be de facto in this case a bright line because the question of infringement and then the exceptional nature has already been decided by the jury, and the judges had the opportunity to consider that when ruling on our motions. Generally speaking, I'm not suggesting that the court should adopt a rule that any time there's an infringement, there's by necessity there's a counterfeit. There's nothing in the statute that suggests that you can make that jump. You have to have this extra finding that not only was there an infringement, a likelihood of confusion, as Judge Sirica referred to a few moments ago, but also that the mark used was either identical or substantially similar to a point that it becomes a counterfeit, and then with the added point that it is now spurious because there's no authority to associate that mark with the goods and services vended. That's the heightened finding. There's not a bright line rule here in the abstract. Everything you just said made perfect sense to me, but you haven't mentioned the role of the exceptional circumstances analysis within that rubric. And there is some role for that analysis to play, is there not? There is, Your Honor. Just forgive me. I'm pulling up Judge Kaine's decision where I believe in deciding the question of attorney's fees, she dispensed with the exceptional argument. Your Honor, my first job out of law school was for this court, and I used to hate when parties would stand at election and not be able to find that one point. Forgive me, I'm happy to see that. It's a needle in a haystack. We have the same challenge up here, too. I remember. It was before PDF, so it was a bit harder to find particular words. But I'm happy to submit, if Rule 34 is still the letter, I'm happy to send a follow-up letter. 28J, I think. 28J, thank you. Well, I guess let me try to help you. 1117B provides that in the case of knowing use of a counterfeit mark, the court shall enter judgment for three times such profits together with reasonable attorney fees. That's why we're here. That's what you want. You got everything you wanted except that, right? Yes, Your Honor. But I just skipped over a clause in the middle of that sentence which says, unless the court finds extenuating circumstances. And I'm just showing you my hand and saying it would seem prudential for, at least in my view, for this court to send it back to Judge Kain, perhaps correcting the legal analysis consistent with the majority view of the circuits. But rather than just entering the relief you seek, to give her the opportunity to evaluate with respect to the various defendants whether there are extenuating circumstances that would cause her to, in the exercise of her discretion, not give trouble damages and attorney's fees. And, Your Honor, I guess where I would come out on that is that decision or that determination has already been made in the course of awarding attorney's fees. Judge Kain had that option to find that, in this case, a reasonable attorney's fee award was not appropriate given the nature of infringement. And she found, to the contrary, that it was exceptional, not only willful, but something deserving of that heightened punishment. And I would submit to you that the same analysis would apply to the counterfeiting questions. The question really came down to whether, as a matter of legislative interpretation, what the appellees did here was counterfeiting of a trademark as opposed to just a run of the mill infringement. I'm sorry. If we were to adopt the analysis of Judge Kain in this matter, do we do real damage to the use of the counterfeit section with goods or can we distinguish the facts, in this case, from the goods situation? Well, I don't know that we can. I mean, we can only distinguish anything, I suppose, if we try. But I think you're getting at Judge Kain. As a practical matter. You do do, I think, real damage to the enhanced penalties and the Congressional intent to punish counterfeiting because if we're to adopt the interpretation of the Sixth Circuit in this case, the U.S. structures case, the only time treble damages will be available for counterfeiting is if someone, an artist, for example, takes a pen and creates a perfect or near-perfect forgery. The situations where I break into a warehouse, steal a bunch of General Electric boxes, or something falls off the back of a truck and vend my clearly non-GE wares in those boxes, that's one of the mill infringements. That's not counterfeiting. I submit to you that that's, frankly, more egregious than the artist who makes a near-perfect forgery because now we're using what some of the courts have used called authentic trademarks to vend inauthentic products. So to come down on the course that the Sixth Circuit has charted really would, I don't want to say encourage, fraudsters who are interested in this sort of behavior to go out and get the real thing as opposed to simply making a really good or near-perfect facsimile. Just one last question from me. This deals with your prejudgment interest argument. I wonder, there's a case, and I'm not sure if you're familiar with it, maybe you'll let me know if you are, William A. Graham Company v. Haughey, I guess, H-A-U-G-H-E-Y. Chief Judge Smith wrote it, 646 F. 3rd, 138s of 2011 case, where he, in the context of copyright, points out, and I'm just picking out one section, but the longstanding rule of our common law that, quote, in the absence of an explicit statutory command otherwise, district courts have broad discretion to award prejudgment interest on a judgment obtained pursuant to a federal statute. Are you familiar with this case at all? Not that particular case, Your Honor. I apologize. I mean, the concept is familiar to me, certainly. Okay. All right. Thank you. Thank you, Your Honor. Okay. Thank you. We'll take the case under advisement. Thank you so much for the excellent argument and briefing. Thank you. Thank you.